Good afternoon, counsel. Our last case for today is case number 4-16-0479, the People v. Carl Kinkade. And for the appellant we have Mr. McCleary, and for the appellee we have Mr. McNeil. You may proceed, counsel. Thank you, your honors. May it please the court, counsel. The state got to the nub of this case in their brief when they characterized the evidence against Carl Kinkade, the defendant in this case, as being overwhelming. I don't think so. I think the evidence in this case was evenly balanced or weak on the prosecution side. Here was the evidence. The minor child alleged that Mr. Kinkade engaged in predatory criminal sexual assault against her. That was the evidence. There was nothing else. There was no immediate outcry evidence. She testified on the stand that it may have occurred two years prior during the summer, but she wasn't sure. She told her mother about this under questioning from the mother long after the event. No other evidence. My client, throughout, denied that he had done this. And during the minor child's testimony, she admitted that she would sleepwalk on occasion and that she may have been sleepwalking on the night when this alleged event occurred. She also testified that her grandmother, who is my client's wife, came out after the alleged assault and that the grandmother and my client had coffee. Well, we had the grandmother testify at the time of trial. And she testified that, yes, she was there, and that she was aroused by laughter. The laughter from my client and the laughter from the brother of the minor child. Because the minor child had come out sleepwalking, was mouthing gibberish, and they found that amusing. That the brother then took the minor child back to bed, and that my client and his wife then had some coffee. Now, I think there's various ways to characterize that evidence, but I would not characterize it as overwhelming. In my argument today, I'd like to reverse order that I put them in my brief. Sort of like the way witches allegedly say their prayers from back to front. And the reason for that is because the last argument is different from the other ones. And the last argument that I have in this case is that the evidence was simply insufficient to convict my client beyond a reasonable doubt. Now, I quite understand the high bar to reach in regard to this. Because I believe the rule is, could any rational trier of fact have found that it wasn't beyond a reasonable doubt? I submit that this is a very rare case where I don't see how anyone, any rational trier of fact, could have found that there wasn't a reasonable doubt. Because of the unrebutted alibi evidence, because of the admission of the minor child that she may have been sleepwalking that night, because of no outcry when there were various other individuals around that she could have had an outcry with, and the delay between the alleged crime and when she first said anything at all about it. I think these are substantial facts that were overlooked by the jury when the jury made its decision. Now, the other arguments that I'm making in this case remind me of an old story I was told long ago at the U of I in an art class. I don't remember anything else about the art class, but I remember this story. Michelangelo had a colleague who was an artist, and he had painted a portrait of an Italian countess, a beautiful portrait. And he was looking at it before he shipped it off to the client, and he noticed up at the corner, there's a little color defect up there. Eh, nobody will ever notice that. And then he noticed that he had put the ring on the wrong finger of the countess. Well, maybe that's a bit more substantial. Then he noticed there was some cracking down on the left-hand, bottom left-hand side. And eventually there were enough imperfections that he scrapped the whole painting and redid it, threw it on the bonfire. The other elements that I'm bringing up, the other arguments, aren't deadly in and of by themselves. But I think in a case where we would submit the evidence was evenly balanced, combine them all, and I think they require a new trial in this case. And what are those? First up is, I think, an attempt by the state to diminish the burden of proof. In their closing argument, the state made this statement. Who would want to live in a world where a victim's statement is not enough? A world where a defendant can commit unspeakable acts and get away with it? Well, what was the purpose of saying that? Well, it's pretty obvious. That's all they had, the victim's statement. And what they were telling the jury, in effect, do you want to live in a world where a victim's statement can't simply be accepted? Because of the terrible things this person did to this minor child. I think that's what they were trying to put into the minds of the jury, that type of burden of proof. Now, of course, to come back to that is, well, you know, we have a trial instruction that says, ignore everything that those attorneys have been saying. None of that is evidence. Agreed, none of that's evidence. But it's argument. And there's a reason why attorneys engage in closing argument. Because it's often very effective. And a statement like that, where the evidence is evenly balanced, I think it's deadly. Deadly to the defense. The next argument, whether the trial court erred in not finding that the state made improper appeals to a motion. In this case, the prosecutors waxed eloquent about how the child felt when she was penetrated, allegedly, by the fingers of Mr. Kincaid. And there were several other instances that are cited in my brief. I would submit that there was no reason to do that, except to try to excite the emotions of the jury. And we would allege that in a case like this, where the evidence is closely balanced, once again, that is deadly. I defy anyone to come up with another rationale for why they were doing that, except to excite the emotions of the jury. The next argument is the state reasonable doubt. And the state made the statement, reasonable doubt. It is a standard that is met in courtrooms across the nation every day of the week. Now, if this was truly a case where the evidence was overwhelming against my client, I don't think there would be anything that I could do with that in an argument here. Simply because if the evidence is overwhelming, that by itself is a little thing. But in this case, I think the evidence was closely balanced. And little things like that build up to convict my client. And then we have what I will concede is the weakest argument we've heard in this court. Largely due to people versus downs. And that's the whole discussion by the court of reasonable doubt. Now, I've always thought that there's a tension between the idea that a trial court has to discuss the 431 principles, among which is the reasonable doubt, but that the trial court can't define reasonable doubt. Well, when you tell the jury that you can't define reasonable doubt, and it's up to them to define it themselves and then to talk about it with each other, I think if anything, it only mystifies reasonable doubt to the jury. Makes it perhaps a harder concept for them to grasp. But in this case, it came after people versus downs. I kept it in the brief more or less to see if there were any additional cases that would come down in the time period to further explain what the Supreme Court wants now in that area. I haven't seen anything. But I think when you add all these factors up in a case where the evidence was so closely balanced that a new trial is required for my client, I'll be happy to entertain any questions the court might have. I don't see any at this time. Counsel, you will have time on rebuttal. Thank you. Thank you. Mr. McNeil? First, I want to submit that plain error, as far as I know, I've never seen an authority on this, that it's a conglomeration of all errors. I think plain error analysis is taken on an error-by-error basis.  That's the whole point of the forfeiture rules. If each of these were preserved, there may be a different story here. However, to take them all together would just simply encourage counsels more to not preserve these issues so they can put them all together as a super plain error argument. Again, there's no case that I know of that comes to that conclusion. There are multiple issues addressed in this brief, in the briefs in this case. I'll touch briefly on all of them. But if your honors have any questions about any of them at any time, shoot, fire away. The first issue was the trial court discussing reasonable doubt during voir dire. They did this in the context of a question. They wanted to make sure the panel could not foresee any issues grasping with the definition of reasonable doubt, which they had to make for themselves. Contrast that with people versus downs, which the defendant cited. In that case, the issue came out during deliberations. The jury sent a trial court a question asking what the definition of reasonable doubt is. The trial court responded by saying it cannot give them a definition and that they should define it themselves. The Supreme Court in downs said that this was an unquestionably correct answer to give. Here, if anything, the trial court's voir dire question was unnecessary. At most, it prevented a situation exactly like what would occur in downs, where a potential juror down the road can't define reasonable doubt for themselves, which ends with jury questions which can only complicate matters. Importantly, people versus downs held that no plain error occurred. It's also all of these issues are forfeited. The defendant sees that these issues are forfeited except for sufficiency of the evidence. The last issue. When we look at this one, it's clear that no plain error occurred. At most, it was an unnecessary question by the trial court during voir dire. As for the arguments about the prosecutor's closing remarks being improper, again, all of these are forfeited. In fact, the trial court, if you would step into the trial court's shoes, they would have to sua sponte object to most of these arguments. I don't think there were very many, if any, objections during the prosecutor's closing argument. So the trial court would have the extra burden of sua sponte objecting. Also, as applies to all of these arguments, it's well settled that prosecutors are given wide latitude and great leeway in their closing arguments. They can discuss subjects of general knowledge, common experience, and common sense. We can go through each individual one. The first one was about reasonable doubt being proven in U.S. courts every day. This was obviously a general knowledge, common sense thing. Of course, there are criminal trials in the U.S. every day. Of course, juries find return verdicts of guilty on those criminal trials every day. This is not a revelation for any reasonable person sitting on the jury. Contrast that with Jones, which defendants cited. There, the prosecutor partially defined reasonable doubt in his closing, saying reasonable doubt does not mean beyond all doubt. It does not mean beyond the shadow of a doubt. It means beyond a reasonable doubt, the same standard in every criminal case in every county in this country. The only similarities between Jones and this case is that last sentence. However, that is the troubling language in Jones. The troubling language are the first two sentences, which suggest something, at least, that reasonable doubt isn't.  It's not beyond the shadow of a doubt. That suggests the definition for reasonable doubt. That's the egregious language in Jones. Obviously, much more egregious than the language here. Still, this court in Jones found that that was not plain error. So clearly, this less egregious language, which only stated a matter of common sense, was not plain error. As for the prosecutor's remarks about the victim appealing to the emotions of the jurors, clearly, the prosecutor can talk about the exact testimony that KT gave the victim. The victim testified, yes, defendant digitally penetrated me twice and it hurt. This is not even a reasonable inference for the prosecutor to make. It's the exact testimony of the child. Of course, it's not improper to talk about that in closing arguments. Then, we get the timeline. Defense counsel has his closing argument. It's almost primary focus is to attack the credibility of the victim, KT. Then, in rebuttal, the prosecutor stated, who would want to live in a world where a victim's statement is not enough, a world where a defendant can commit unspeakable acts and get away with it? This was clearly a response to defense counsel's attack on KT's credibility. It was not improper to say that, and more importantly, it's not an inaccurate statement of the law. All courts in Illinois are well settled that a single witness, if positive and credible, is sufficient to convict. Does it in any way suggest that the jury should disregard the burden of proof and instead just... Well, the jury was properly instructed. They were instructed on each element, and that they had to prove each element beyond a reasonable doubt. A jury is presumed to follow instructions. Nothing in the record indicates that the jury didn't follow instructions in this case. My argument there would be that the instructions, which are taken back to the jury, of course, on top of the instruction to disregard any arguments not based on evidence. Clearly, this does not rise to the level of plain error, and I would say that it's not even improper. The next remark was, no parent should ever have to hear the words KT said to her mother about the allegations. Again, this is general knowledge, common sense, common experience. No parent in the world wants to hear their child talk about sexual allegations against them. The last one is that the prosecutor improperly vouched for the credibility of state witnesses. This court in Pope, which I cited, stated that a prosecutor may comment on a witness's credibility when such remarks are based on facts and evidence with reasonable inferences drawn therefrom. This court rejected the notion that a prosecutor improperly crosses the bounds of asserting his personal views regarding witnesses' credibility if the jury has to infer the prosecutor is doing so. Thus, we hold that for a prosecutor's closing argument to be improper, he must explicitly state that he is asserting his personal views, stating, for example, this is my personal view. Here, there's no language indicating that this was a personal observation, like, oh, I know KT, she wouldn't lie to you. I know this state's witness. They won't lie to you. Clearly, this was not the prosecutor's personal view. In fact, all the remarks cited in both briefs are based on evidence or at least reasonable inferences to draw from that evidence. Finally, maybe most importantly, with all of these improper prosecutorial remark arguments, as Justice Kinect stated in rushing, as I cited in my brief, improper prosecutorial remark can be cured by instruction to the jury of disregard argument, not based on the evidence. This is exactly what happened in this case. In fact, the language the court used in this case is almost verbatim to the trial court's language that they used in rushing. It's based on a pattern of instruction. Again, a jury is presumed to follow their proper instructions. Here, they were properly instructed. This cured any remark, even assuming that they were improper by the prosecutor. Clearly, none of this rises to the level of plain error. The last argument is that there was insufficient evidence to convict. This was a credibility case. Defendant stated that he didn't do this. The victim, KT, testified that, yes, he did. Of course, the jury was in the best position to evaluate the credibility of all the witnesses, mainly KT and defendant. The jury is not required to accept contradictory alibi testimony over positive identification by the victim in the testimony of a single witness if positive and credible is sufficient to convict. Here, because the jury is in such a position, we have a very high standard of review. We have to look at all the evidence in the light most favorable to the prosecution. We have to allow all reasonable inferences in favor of the prosecution. And we have to decide if any rational trial fact could find defendant guilty beyond a reasonable doubt. Here, the victim stated, yes, defendant did this. Looking at that evidence in the light most favorable to the prosecution, there was clearly sufficient evidence to convict beyond a reasonable doubt. And if there are no questions, thank you. I don't see any. Thank you. Any rebuttal, Mr. McClary? Very brief. In regard to the issue of vouching, there is a split in the appellate court. I would cite the case of People v. Williams, 2015 L.A.M. 122745, paragraph 20. To the extent Pope stands for the proposition that vouching only crosses the line when the prosecutor uses a specific phrase to qualify as comments, we disagree. Instead, courts should use a common sense approach to determine whether the statements conveyed to a reasonable juror that the prosecutor believes that a witness is credible based on the prosecutor's personal knowledge, other information not contained in record, or that the testimony is credible because it has the approval of the government. I submit that People v. Williams makes more sense simply because prosecutors aren't idiots. If they suddenly hear, well, in order for us to be accused of vouching, we have to say certain words. We're not going to say the certain words, and we're going to get around that. We're still going to vouch. Although, in this case, I think we did have vouching, which I think would even pass the test of Pope. And we heard from Jamie, who testified, I would argue, testified candidly that day. And that was the mother of the victim, and the prosecutor referring to Jamie. And then the prosecutors went on to state, so we had leading questions on cross at a pretty rapid pace, a fast pace. Kendall, the minor child, answered them. She wasn't having to think, what's the lie again? What did my parents tell me to say? It was easier for her to answer because it was the truth. I don't think, I can't see how the prosecutor could possibly say that without vouching for the testimony of the witness. Once again, this case was all about credibility. So when you have the prosecutors vouching like that, that's got to have an impact upon the jury. And if there are any questions, I'll be happy to try to answer them. I don't think so, counsel. Thank you very much. We'll take this matter under advisement.